I believe the primary questions in this appeal are past persecution and the future persecution suffered by the respondent. And in regards to the past persecution, I would like to mention the two important cases that I would like to base my argument on. It's Sekerabluna v. INS and Chukhova v. Gonzalez. These cases were decided by this court. But before I go any further, I'd like to point out an important distinction in this case. The immigration judge found that the petitioner and her son, both who testified at the court hearing, were credible and their testimonies And first of all, in regards to the past persecution, this court repeatedly held that they don't distinguish between a principal applicant and a judge.  The problem I think you have with past persecution is whether the acts which are believed to have occurred because your client was found to be credible amount to persecution or simple discrimination. There's a difference. Would you address which acts you believe constitute persecution and what cases you rely upon for that conclusion? Yes, Your Honor. First of all, I would like to talk about the persecution on the petitioner's son. And in our opinion, it is persecution because when he was attacked at the age of six years old, during the attack, he was called an occupier and a Jewish bastard. And the attackers beat him and poked his eye with a stick, causing him to bleed. I can't understand what you're saying. You are speaking too quickly with too heavy an accent. But I don't get what you're saying. I'm sorry. What I was trying to say that the first attack that happened to this family was on the petitioner's son when he was six years old. And during the attack, he was called an occupier and a Jewish bastard. And this attack caused a complete blindness on the son. And as this court... The attack itself blinded him only in one eye. Did the other eye later go blind? I couldn't tell from the record. I gather there was some degeneration. But is he now blind entirely? No, the one eye is blind, and the vision on the second eye is deteriorating. So when the couple filed the police report, police practically did not do anything for the six years that the couple stayed in the Republic of Moldova between the 93 and 99. This act alone says that the police or the government was not willing or unable to control the forces or the people that perpetrated. That's a tricky one for me. If the police, based on the ground of discrimination, particularly Jewish but maybe even outsider, had done this, this is clearly persecution. Yet this attack was by a group of older boys who are clearly prejudiced and behaving despicably. But that happens a fair amount. And for us to reach the next conclusion, which you recognize and are talking about, that the authorities are unable or unwilling to control this is a little harder. I understand that they went to the police and the police didn't do anything about it. Is that enough for us to conclude that this has then become official action? Well, it's not only this particular fact. If you take all the facts that all the incidents that Petitioner suffered in this case, they all cumulatively arise to the level of persecution because there are all other incidents that Petitioner suffered, and namely when she was fired by her boss. And she used to work in the Ministry of the Inferior, which is a governmental body. And then she was denied the medical care, which is a state hospital, and all the employees, other state employees. And this court held that when the persecution actually is perpetrated by the government or the government involved in the persecution, I mean, the applicant should not even file the police report because it will be constituted persecution by the government. So we have the blinding in one eye plus deterioration in the eyesight in the other. We have she's fired from her job. We have she's not given health care by the Moldovan Red Cross. Anything else? Not only by Moldovan Red Cross, but by the Moldovan hospital itself, yes. Anything else on the list? I want to make sure that I've got it all in mind. And then she was threatened. She was called during the threat, she was called an occupier. Her son was threatened again because the person who spoke with the Moldovan accident called her an occupier. He threatened the son that they said that they would make him completely blind, and they were also threatening to rape a teenage daughter. The political picture has changed a bit in Moldova, hasn't it? I'm sorry, I didn't understand. The political picture has changed, has it not? Well, Your Honor, in respect maybe to the non-Moldovan people, it changed. But this particular petitioner, besides that she's of non-Moldovan ethnicity, she's also of a Jewish ethnicity. And Jews were severely persecuted throughout the history, not only of the former Soviet Union, but even now. In the 2001 and the 2002 Department of State country report, they do say that the persecution of Jews still continues because there were examples of the synagogue bombed and the cemetery destroyed and the Jewish tombstones were desecrated. And so if a person is of a Jewish descent, you can view it as a member of a disfavored group. And this court held that even if a country conditions in some of the cases may eliminate the claim of a well-founded future persecution, but in the cases when we are dealing with members of the disfavored group, they will not dispose of a claim. Well, perhaps at this time, why don't we hear from the government, and you'll have a little more than two minutes to respond. Okay, thank you. Thank you. May it please the Court, Charles Kander on behalf of the Attorney General. Your Honors, the first point to make, I think, is that, perhaps not made clear in the briefs, is that withholding of removal and protection under the regulations implementing the Convention Against Torture have been waived. Now if I can ask you also, articulate clearly. I'm sorry. Withholding of removal and protection under the regulations implementing the Convention Against Torture have been waived. They've not been raised in the briefs, and I don't think they are any longer on the table. Turning to the immigration judge's decision, there are two key findings. First, no past persecution. And second, assuming that the attack on the son would constitute persecution for the whole family, that any presumption of future persecution would be rebutted by changed conditions. One thing puzzled me about the IJ's decision as to the son. She says that she counts it less or weighs it less heavily because the son is not the principal applicant. Is that the right law? Not exactly correct, perhaps, in this circuit. I don't think, however, it's at all a fatal error in this case because, A, she did consider the persecution or the attack on the son. She noted that it's not necessarily persecution because she's not convinced that, in this instance, either the government was certainly not the agent and was not unable or unwilling to prevent the attack. No, no, I understand all that. But I want to make sure I understood your answer to my question, which is, was the district judge ‑‑ excuse me, was the immigration judge wrong in holding that or applying the legal standard that because the boy is not the principal applicant, his persecution or his ill treatment, whatever it amounts to, is discounted to some degree? I believe that might be incorrect under the law of this circuit. Might be? Is wrong? Under the law of this circuit, it would be ‑‑ it is an incorrect statement of the law. Okay. However, I don't believe it is a reversible error in this case. Because, as you just argued in your view, it's not persecution in any event. Yes. Okay. Now, turning to ‑‑ And the reason it's not persecution is because the attack on the child was not perpetrated by government agents. That's right. Nor by groups the government was not willing to control. I think ‑‑ How about that second portion? Counsel has stated that after the attack, there was a police report, the police did nothing, and that also that treatment was denied at the hospital because the child was half Ukrainian and half Jewish. Doesn't that sort of cut the other way on the question of whether the government was not willing to control? Well, first of all, Your Honor, I believe that the evidence in the finding of the immigration judge is not that the police did nothing. It's that they were unable to catch the perpetrators. And as Your Honor has alluded to earlier, the mere fact that the police can't catch someone does not mean that they're unable or unwilling to prevent an attack or to stop whoever's committed the alleged persecution. Now, I can't remember her precise testimony on that. Do you remember exactly what she said as to whether they said, well, we can't catch them or we don't care, or the nuance there will make some difference? You know, I cannot remember her exact words, her exact testimony, but I believe that the immigration judge's finding is that it's not necessarily the case that the inability to apprehend a criminal is the same as... Well, it's not necessarily the case, but I'm trying to figure out what she said. And you can't remember as you stand there. As I stand here, no, I cannot remember her exact testimony. I apologize. I'd like to turn to the contention that the Petitioner makes that all of these incidences of alleged persecution, even if they do not individually constitute persecution, they should be considered persecution cumulatively. And for that proposition, the Petitioner relies on cor oblina. And I think that reliance is misplaced. In cor oblina, you had a Petitioner who herself, her husband, her daughter, and her boss had all been beaten specifically on account of their religion. There was no question that every harm suffered was specifically because the Petitioner and her family were Jewish. Here, the alleged incidences of persecution can stem from a variety of motivations. Regarding her ability to obtain transportation to the hospital, for example, it seems to the immigration judge concluded that had as much to do with her inability to speak the language than any ethnicity. I heard you say the instances of persecution came from different sources. Exactly. So you are admitting that there was persecution, not mere discrimination. The incidences of alleged persecution, Your Honor, I do not believe that any individual incident is necessarily persecution. I think the insults that were inflicted upon her at work was discrimination. The demotion was discrimination, not persecution. Persecution is extreme. I don't think that these events necessarily, they certainly don't compel the conclusion that the Petitioner was persecuted. And more importantly, you can't aggregate these lesser non-persecution events to constitute persecution in the entirety in the past because there are different grounds. And this Court has held that you can't aggregate different incidences based on different grounds to form one persecution claim. Turning to the immigration judge's decision that any presumption of future persecution has been rebutted, all of the Petitioner's problems stem from either nationalists in power or nationalists on the street. They come following the loss of power by the Communist Party, the rise to power of the Nationalist Party, specifically her position at the Ministry of the Interior, as I believe it was called. She actually obtained this job through connections that her husband's family had with the Communist Party. Now the Communist Party is in power. So the basis for- Is not in power. Exactly. So I think in all these cases, these asylum cases, it's always important to remember the standard of review here. I think we're, I'm sure Your Honors are familiar with it, but it just, it bears repeating that it is the record viewed as a whole that that compelled the conclusion that any reasonable fact finder would be compelled to conclude that either, in this case, either Petitioner did in fact suffer past persecution or that any presumption of future persecution has been rebutted. I think that the record in this case supports the immigration judge's decision. It does not compel a contrary result. And the petition for review should be denied. If there are no other questions. Okay.  Thank you. Response? Thank you, Your Honor. In respect, again, with the persecution of the Petitioner's son, I'd like to point out what was exactly the testimony. The Petitioner did testify that the police found out who were the attackers and they even went to the families to talk to them. What page are you on in the administrative record? I don't remember the exact page. I know the transcript and page around 103 or 183 talks about the persecution on the son. 103? If you don't mind, I will just grab my pen. Yeah, I'd like to be able to read it together. This is especially important since she has a good credibility finding. It starts on page 106. Now, are you reading the transcript pages or the administrative record pages? The page in the middle of the bottom or on the right-hand side on the bottom? Which page? It's closer to the top. No, no. When you say 106. Never mind. I'll just look at 106 here. This is the only pagination I have. Okay. So I'm after the testimony that she's giving about the police reaction to the attack on her son. Yes. And what page are you on? It starts on page 106. It's the last question. And then it goes on to the page 107. And then the answer. Hang on a second. I'm still not with you. There we go. Okay. I'm now with you. Let's see here. We poked him out of the stick. You reported to the authorities. When such really bad, grave incidents happen, usually the ambulance is called or you take your own child to the hospital. In that case, the ambulance was called. There was a recording in the police report. And how did the police follow up? The police came and questioned both us as a family and then the families of those kids, who they fight. So the kids were taken to the so-called registered list for adolescent kids. What kind of list? Special registration for those kids who were accused of some crime or beatings or unlawful behavior. Is there anything more? No, I don't believe so. Okay. Well, it sounds as though maybe they didn't put the kids in jail, but they picked them up and did something to them. Yes, but if you read further, it says that that list goes to the Minister of the Internal Affairs. And this is the place where the petitioner worked and was persecuted by the employees. Okay. Okay. Thank you. That helps me understand. Yes, thank you. And with regards to the rebuttal by the government, I don't believe that the evidence that was submitted rebuts the presumption of the well-founded fear of future persecution because, as I said earlier, that not only the petitioner is of non-Moldovan ethnicity, she is of a Jewish descent. And the persecution by the government or by people that the government cannot control goes through the centuries. Okay. Thank you, Your Honor. Thank you very much. Thank both of you for your help for arguments in this case. The case of Vloskuk v. McKaysey is now submitted for decision. The next case on the argument calendar, Pfeiffer v. McKaysey, has been submitted on the briefs. The next case on the argument calendar is Akane v. McKaysey. Those of you sitting in the audience may note that there's a certain pattern. Mr. McKaysey is a frequent litigant on Fridays.
judges: Noonan, Fletcher, Bea